UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **REGINOLD CAVOY STEED,** | ) |
| Petitioner, | ) |
| v. | ) NO. 3:19-cv-00568 |
| **TONY MAYES, Warden,** | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Reginold Cavoy Steed,[1] a *pro se* state prisoner, filed a petition for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1) and Respondent filed a response (Doc. No. 9). As explained below, Petitioner is not entitled to relief and this action will be dismissed.

### I. Procedural Background

A Davidson County jury convicted Petitioner of attempted voluntary manslaughter, especially aggravated robbery, and aggravated assault. State v. Steed, No. M2016-01405-CCA-R3-CD, 2017 WL 1830105, at *1 (Tenn. Crim. App. May 5, 2017). After trial, the court granted trial counsel's motion to withdraw and appointed new counsel ("post-trial counsel"). (Doc. No. 8-1 at 86–90.) The court sentenced Petitioner to a total of 27 years' imprisonment. Steed, 2017 WL 1830105, at *1. The Tennessee Court of Criminal Appeals ("TCCA") affirmed, id., and Petitioner did not request permission to appeal to the Tennessee Supreme Court.

Petitioner then filed a *pro se* petition for post-conviction relief. Steed v. State, No. M2018-00492-CCA-R3-PC, 2019 WL 169265, at *2 (Tenn. Crim. App. Jan. 11, 2019). The court held an

---

[1] The docket sheet and the Court's previous order (Doc. No. 5 at 1) incorrectly spell Petitioner's first name as "Reginald," rather than "Reginold" (see Doc. No. 1 at 1). That has been corrected here, and the Clerk will be directed to update the docket sheet to reflect the correct spelling in the accompanying order.

evidentiary hearing, at which Petitioner represented himself with an appointed attorney serving as advisory counsel. Id. The court denied relief. Id. at *6. Petitioner's advisory counsel represented him on appeal ("post-conviction counsel"). (See Doc. No. 8-23 (post-conviction appeal brief).) The TCCA affirmed,[2] Steed, 2019 WL 169265, at *2, and Petitioner did not request state Supreme Court review.

## II. Factual Background

On post-conviction appeal, the TCCA provided the following concise summary of the facts established at trial:

> [T]he victim had met the Petitioner through a mutual friend and had spent time with the Petitioner on five or six occasions. [Steed, 2017 WL 1830105, at *1.] On February 18, 2015, the Petitioner and the victim met in the parking lot of a Firehouse Subs restaurant in Nashville so that the Petitioner could repay a $500 loan. Id. After the Petitioner got into the victim's car, he pointed a gun at the victim and demanded that the victim remove his pants. Id. The victim offered the Petitioner his money, shoes, and car, but the Petitioner never took any action to retrieve these items. Id. The victim then tried to grab the gun from the Petitioner, and a struggle ensued that continued into the parking lot. Id. When the victim was unable to wrest the gun away from the Petitioner, he ran back to his vehicle and attempted to start it, and the Petitioner fired three or four shots into his car. Id. at *1–2. The victim then jumped out of his car and ran to a nearby grocery store, where the police were called. Id. at *2. As he ran toward the grocery store, the victim heard four additional gunshots fired behind him. Id. During the incident, the victim sustained a gunshot wound to his right wrist and two gunshot wounds to his right leg. Id.
>
> The victim later discovered that his vehicle was missing from the Firehouse Subs parking lot. Id. It was later found in a police impound lot in Jackson, Tennessee, where the Petitioner resided. Id. The vehicle's windshield had been shot, and bullet holes were present in the car's middle console. Id. When this vehicle was located, all the valuables inside, including the victim's cell phone, were missing. Id.
>
> The victim initially told police that he did not know the shooter's name. Id. He also said he was unable to provide them with the Petitioner's phone number because he had stored this number in his cell phone, which was now missing. Id. The morning after the shooting, the victim called his and the Petitioner's mutual friend and was able to provide officers with the Petitioner's full name. Id.

---

[2] Unrelated to Petitioner's request for post-conviction relief, the TCCA remanded for entry of a corrected judgment clarifying that the trial court merged the conviction for aggravated assault into the conviction for especially aggravated robbery. Steed, 2019 WL 169265, at *9.

2

> The victim made multiple statements to police, which were consistent with his trial testimony. Id. at *4. The victim also identified the Petitioner as the perpetrator in a photographic lineup the day after the shooting. Id.
>
> The Petitioner testified that he called the victim on February 18, 2015, for the purpose of purchasing one-quarter of a pound of marijuana from him. Id. When the men had a dispute over the drugs, the victim pointed a gun at the Petitioner. Id. at *5. As the struggle continued into the parking lot, the Petitioner was able to snatch the gun away from the victim. Id. At that point, the Petitioner said the victim ran back to his car. Id. When he saw the victim reaching toward his center console, the Petitioner believed the victim was reaching for another gun, and he shot the victim. Id. The Petitioner said he panicked after shooting the victim and drove the victim's car to Jackson so he could talk to his parents. Id.

Steed, 2019 WL 169265, at *1.

At the sentencing hearing, "Petitioner made an allocution, wherein he maintained his innocence and denied being the shooter. [Steed, 2017 WL 1830105, at *6.] The Petitioner said he only presented a self-defense theory because trial counsel told him that it was in his best interests to do so. Id." Steed, 2019 WL 169265, at *2.

### III. Asserted Claims

Petitioner asserts three claims. First, that post-trial counsel was ineffective at the sentencing hearing by failing to address an alleged victim impact statement in which, according to Petitioner, the victim recanted his identification of Petitioner. (Doc. No. 1 at 5–6, 16.) Second and third, Petitioner asserts that post-conviction counsel was ineffective by failing to make certain arguments on appeal. (Id. at 6–9, 16–17.)

### IV. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner faces a high burden when seeking federal habeas corpus relief on a claim that was properly presented to the state courts. Kelly v. Lazaroff, 846 F.3d 819, 831 (6th Cir. 2017) ("AEDPA sets the burden of proof extremely high for the prospective habeas petitioner."). Such a claim cannot

3

be the basis for relief unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Thus, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" Hill v. Curtin, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (quoting Lockyer v. Andrade, 538 U.S. 63, 73 (2003)). "Under the 'unreasonable application' clause of [Section] 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Harris v. Haeberlin, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it "incorrect or erroneous"—instead, the federal court must find that the state court's application was "objectively unreasonable." Id. (quoting Wiggins v. Smith, 539 U.S. 510, 520–21 (2003)).

To grant relief under Section 2254(d)(2), a federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." Young v. Hofbauer, 52 F. App'x 234, 236 (6th Cir. 2002). State-court factual determinations are only unreasonable "if it is shown that the state court's presumptively correct

4

Case 3:19-cv-00568 Document 13 Filed 07/05/20 Page 4 of 11 PageID #: 1755

factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." Pouncy v. Palmer, 846 F.3d 144, 158 (6th Cir. 2017) (quoting Matthews v. Ishee, 486 F.3d 883, 889 (6th Cir. 2007)). "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." Rice v. White, 660 F.3d 242, 250 (6th Cir. 2011) (citing Byrd v. Workman, 645 F.3d 1159, 1172 (10th Cir. 2011)).

## V. Analysis

Respondent concedes that Petitioner properly presented his first claim for relief to the state courts and argues that the TCCA's rejection of that claim was not unreasonable. (Doc. No. 9 at 14–17.) Respondent also contends that Petitioner's second and third claims for relief should be dismissed, in part, because they are outside the scope of federal habeas corpus review. (Id. at 17–19.) The Court agrees, and will address Petitioner's non-cognizable claims before turning to the merits of Petitioner's first claim.

### A. Claims 2, 3—Ineffective Assistance of Post-Conviction Counsel

In claims two and three, Petitioner asserts that appointed post-conviction counsel was ineffective on appeal. But AEDPA clearly provides that claims of ineffective assistance by post-conviction counsel cannot be the basis for federal habeas relief. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); Hodges v. Colson, 727 F.3d 517, 531 (6th Cir. 2013) (citing Martinez v. Ryan, 566 U.S. 1, 17 (2012)) (explaining that Section 2254(i) "bars a claim of ineffective assistance of post-conviction counsel as a separate ground for relief").

5

Moreover, the specific nature of the complaints underlying claims two and three also cannot support a claim for federal habeas relief. Petitioner asserts that, on appeal, post-conviction counsel should have raised claims regarding the post-conviction court's alleged failure to issue an appropriate preliminary order, and the state's alleged presentation of inauthentic evidence at the evidentiary hearing. (Doc. No. 1 at 6–9, 16–17.) But "the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." Cress v. Palmer, 484 F.3d 844, 853 (6th Cir. 2007) (citing Kirby v. Dutton, 794 F.2d 245, 246–47 (6th Cir. 1986) and Roe v. Baker, 316 F.3d 557, 571 (6th Cir. 2002)). That is because "attacks on post-conviction proceedings 'address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration.'" Leonard v. Warden, Ohio State Penitentiary, 846 F.3d 832, 855 (6th Cir. 2017) (quoting Kirby, 794 F.2d at 247). Accordingly, Petitioner's second and third claims will be denied.

### B. Claim 1—Ineffective Assistance of Post-Trial Counsel

In claim one, Petitioner asserts that post-trial counsel was ineffective at the sentencing hearing. As background, Petitioner asserts that the victim submitted a victim impact statement after trial that recanted his previous identification of Petitioner. (Doc. No. 1 at 5.) According to Petitioner, this statement read, "to be honest and truthful I don't know who it was." (Id.) Based on this statement, Petitioner argues, post-trial counsel should have requested a mistrial and argued that the state committed a due process violation by allowing the victim's supposedly perjured trial testimony to go uncorrected. (Id. at 5, 16.)

Petitioner properly presented this claim to the state court on post-conviction appeal by arguing that "post-trial counsel was ineffective in failing to present evidence that the victim had recanted his trial testimony identifying the Petitioner as the perpetrator." Steed, 2019 WL 169265,

6

at *6. The federal law governing the adequacy of a criminal defendant's representation is defined in Strickland v. Washington, 466 U.S. 668 (1984). Premo v. Moore, 562 U.S. 115, 121 (2011). The TCCA correctly identified this standard before rejecting Petitioner's claim on the merits. Steed, 2019 WL 169265, at *6–7.

Under Strickland, a petitioner must show (1) deficient performance and (2) prejudice to the defendant. Knowles v. Mirzayance, 556 U.S. 111, 124 (2009) (citing Strickland, 466 U.S. at 687). "[A] court deciding an ineffective assistance claim" need not "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. Counsel's performance is deficient where it falls "below an objective standard of reasonableness." Id. at 687–88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)). To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Further, when a petitioner raises an exhausted claim of ineffective assistance in a federal habeas petition, "[t]he pivotal question" is not "whether defense counsel's performance fell below Strickland's standard," but "whether the state court's application of the Strickland standard was unreasonable." Harrington v. Richter, 562 U.S. 86, 101 (2011). This amounts to a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. 12, 15 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170,

7

190 (2011)). Accordingly, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Id.

Here, the TCCA determined that Petitioner failed to demonstrate both deficiency and prejudice for this claim. As to deficiency, the TCCA explained:

> Although the Petitioner claims that post-trial counsel was deficient in failing to present evidence of the victim's recantation, the Petitioner never testified that he told counsel his father had seen the victim's recantation in the court file. In fact, post-trial counsel specifically testified that the Petitioner failed to give him any leads regarding where to find proof of the alleged recantation. He said that despite the absence of any leads, he repeatedly asked the State for proof that the victim had recanted his testimony, but he never received anything. In addition, although the Petitioner's father, Mr. Steed, testified that he just assumed counsel for both parties had seen the victim's recantation because it appeared on the first page of the victim impact statement, he never testified that he discussed this recantation with post-trial counsel. Given this proof, we agree with the State that the Petitioner failed to show that post-trial counsel was deficient in failing to present the alleged recantation.

Steed, 2019 WL 169265, at *7. And as to prejudice, the TCCA concluded:

> We also agree with the State that the Petitioner failed to show he was prejudiced by post-trial counsel's performance given that there was no clear and convincing evidence that this recantation ever existed. The only proof supporting the Petitioner's claim is Mr. Steed's testimony that he saw a handwritten note signed by Officer Marshall indicating that the victim now claimed that he did not know who had perpetrated the crimes against him. However, Officer Marshall testified that she never interviewed the victim and that when she received the victim impact statement from the victim in this case, she forwarded it to the court, the district attorney general's office, and the Petitioner's attorney. A review of this victim impact statement shows that the victim clearly identified the Petitioner as the perpetrator and never recanted his trial testimony. Because the Petitioner has failed to establish that the victim's recantation ever existed, he cannot show that he was prejudiced by post-trial counsel's failure to present it as evidence.

Id.

This application of Strickland was reasonable. First, it was reasonable for the TCCA to conclude that post-trial counsel was not deficient, given his uncontradicted evidentiary hearing testimony regarding his efforts prior to the sentencing hearing. Counsel testified that Petitioner asked him to "get any statement wherein the victim changed his story in [Petitioner's] favor,"

8

(Doc. No. 8-21 at 27), "written or otherwise," (id. at 33). But Petitioner did not give counsel any lead or source for the statement, except to ask the trial court and the state for it. (Id.) Counsel repeatedly asked the state for such a statement, but "never received a copy of any statement with the victim recanting his story." (Id. at 27–29, 33–34.) Additionally, Petitioner's father testified that he saw a statement by the victim recanting his testimony in Petitioner's file at the clerk's office (id. at 58, 62), but neither Petitioner nor his father testified that they told counsel about this alleged statement. In the end, counsel testified that he was "not aware that it ever existed." (Id. at 27.) Because counsel was unable to locate a recanting statement from the victim despite following all of Petitioner's instructions, it was reasonable for the TCCA to conclude that counsel was not deficient by declining to argue this point at the sentencing hearing.

The TCCA's prejudice ruling was also reasonable. It based this ruling on the conclusion that Petitioner failed to demonstrate that the victim's recantation ever existed. At the evidentiary hearing, Petitioner testified that he did not have any evidence that it exists. (Id. at 54.) His father did testify that he saw a recanting statement in Petitioner's file at the clerk's office, and that it was signed by Ruthie Marshall (id. at 65), an officer with the Tennessee Department of Correction, Probation and Parole (id. at 6). But Marshall testified that she did not interview the victim (id. at 6–7), and that, if the victim impact statement included a recantation, it would have been included in the presentence report (id. at 10–11). And the victim impact statement included as an addendum to the presentence report did not include a recantation—in fact, it reiterated the victim's identification of Petitioner as the perpetrator. (Doc. No. 8-12 at 21 ("Reginald [sic] stole my car, drove it to Jackson, Tenn. shot out the passenger window [and] window shield.").)

Moreover, the victim was not alone in identifying Petitioner as the person who shot him. At trial, Petitioner himself acknowledged as much. Indeed, Petitioner testified that he was the

9

person depicted in a photograph sitting in front of the Firehouse Subs where the victim was shot just prior to the shooting. (Doc. No. 8-7 at 118.) Only according to Petitioner, he shot the victim to defend himself after a botched marijuana deal in the victim's car. (Id. at 108–13, 123–25, 130–39.) Of course, at the sentencing hearing, Petitioner testified that he did not, in fact, shoot the victim, and his previous testimony to the contrary was due to trial counsel's advice that it would be in his interest to claim self-defense. (Doc. No. 8-11 at 29.) But that rationale does not explain why Petitioner identified himself as the person in a photograph in front of Firehouse Subs just before the shooting, and it is not consistent with the victim's car being recovered in Jackson after the shooting (Doc. No. 8-7 at 12–13), less than a mile and a half away from Petitioner's mother's house (id. at 142–44).

In sum, the TCCA's resolution of this claim was reasonable, and so it will be denied.

## VI. Conclusion

For these reasons, Petitioner is not entitled to relief under Section 2254 and this action will be dismissed.

Because this constitutes a "final order adverse to" Petitioner, the Court must "issue or deny a certificate of appealability." Habeas Rule 11(a). A certificate of appealability may issue only if Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Here, for the reasons stated throughout the Court's analysis of Petitioner's claims, the Court concludes that Petitioner has not satisfied this standard and will deny a certificate of appealability.

An appropriate Order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE